**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

LEN O. HARRIS,

       Plaintiff,

v.                                Civil Action No. 4:05cv5

STATE FARM FIRE AND CASUALTY
COMPANY,

       Defendant.

## OPINION AND ORDER

This matter was referred to the undersigned United States Magistrate Judge by order dated April 27, 2005, and with the consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

## I. PROCEDURAL BACKGROUND

Plaintiff, Len O. Harris ("Harris"), brought the instant lawsuit against Defendant, State Farm Fire and Casualty Company ("State Farm"), pursuant to both a homeowner's insurance policy and a flood insurance policy to recover damages to Harris's home allegedly caused by Hurricane Isabel ("Isabel"). Harris alleged that the crawlspace under his home was inundated with water during Isabel, causing the heating, ventilation, and air conditioning ("HVAC") system to become saturated and partially filled with water. As a result, Harris alleged that the HVAC system was contaminated with mold, which led to widespread mold contamination throughout the home.

After State Farm denied Harris's claims under both policies,

Harris filed a Motion for Judgment against State Farm in the Circuit Court for the County of York and the City of Poquoson on January 6, 2005. Harris alleged three counts: 1) breach of contract (homeowner's policy); 2) breach of contract (flood policy); and 3) breach of insurer's duty of good faith. State Farm removed the case to this Court on February 8, 2005.[1] Harris filed an Amended Complaint in this Court on May 3, 2005, alleging essentially the same three counts.[2] State Farm filed its Answer on May 12, 2005, asserting twenty-eight affirmative defenses. Among these defenses, State Farm asserted that Harris failed to file suit within the one-year statute of limitations required by Harris's flood policy and that Harris failed to comply with all requirements of the flood policy, including the requirement to submit a timely proof of loss.

On September 9, 2005, State Farm filed a Motion for Summary Judgment as to Count 2, on three separate grounds, each of which would be dispositive, if granted. First, State Farm argued that Harris's lawsuit was time-barred by the flood policy's one-year statute of limitations. Second, State Farm argued that Harris

---

[1] As noted _infra_, this Court has federal question jurisdiction to hear this case pursuant to 28 U.S.C. § 1331. See Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 380 (4th Cir. 2004) (citing Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 606-09 (4th Cir. 2002)).

[2] Pursuant to the parties' agreement, the Court entered an Order on October 25, 2005, dismissing Counts 1 and 3, leaving only Count 2, the flood policy claim.

failed to submit a timely proof of loss as required by the flood policy, thus strictly barring recovery.  Third, State Farm argued that mold damage was not covered by the flood policy.  Harris filed a Brief in Opposition on September 23, 2005, contesting all three grounds.[3]  On October 17, 2005, the Court heard oral argument from both parties on the motion for summary judgment and took the motion under advisement.  On November 21, 2005, the Court notified the parties of its decision to grant summary judgment in State Farm's favor on the grounds that Harris failed to timely file a proof of loss as required by the flood insurance policy, infra.  This opinion and order follows.

---

[3] Harris filed this Brief one day late. In addition, pursuant to this Court's Order dated October 7, 2005, Harris filed a revised Brief in Opposition on October 12, 2005, to correct mistakes in references to the attached exhibits.

In his Brief and at oral argument, Harris argued that State Farm deprived him of the ability to prepare adequately for the proof of loss defense by failing to put Harris on notice that State Farm would rely on this defense. Harris, however, was on notice of State Farm's intent to rely on the proof of loss defense since May 12, 2003, when State Farm filed its Answer asserting Harris's failure to submit a proof of loss as an affirmative defense. To argue at this late date that Harris was not put on notice of this defense is simply not persuasive.

Harris has also strenuously argued that State Farm failed to provide him with adequate discovery responses. Harris contends that had State Farm properly responded to discovery requests, he would have conducted further discovery into the nature and extent of State Farm agent Tom Tragle's involvement as to the submission of a proof of loss. Because Harris never raised any such objections or filed any discovery motions with this Court, Harris's claims at this late date are without support.

## II. __THE NATIONAL FLOOD INSURANCE PROGRAM__

State Farm issued to Harris a Standard Flood Insurance Policy ("SFIP") in its capacity as a "Write-Your-Own" ("WYO") Program Company, pursuant to the National Flood Insurance Program ("NFIP"). Congress established the NFIP under the National Flood Insurance Act of 1968. 42 U.S.C. §§ 4001, et seq. (2000). The Director of the Federal Emergency Management Agency ("FEMA") is authorized to use private insurance companies, like State Farm, as WYO Program Companies, whereby the private insurance companies market and issue the SFIP.[4]  42 U.S.C. § 4071(a) (2000); 44 C.F.R. § 62.23.  Though marketed and issued by WYO Companies, the SFIP is written and

---

[4] For a more detailed description of the NFIP and the role of WYO Companies in flood-related litigation, see Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 598-600 (4th Cir. 2002).  See also Flick v. Liberty Mutual Fire Ins. Co., 205 F.3d 386, 387-90 (9th Cir. 2000).

The Court notes that State Farm is a proper defendant in this litigation, though 42 U.S.C. § 4072 grants federal courts with original exclusive jurisdiction over all flood claims arising under the SFIP that are brought "against the Director" of FEMA.  42 U.S.C. § 4072.  The Circuit Courts of Appeals are split as to whether this statute establishes original exclusive jurisdiction over claims arising under the SFIP, but that are brought against the WYO Company as opposed to the Director of FEMA directly.  See e.g., Van Holt v. Liberty Mutual Fire Ins. Co., 163 F.3d 161, 166-67 (3rd Cir. 1998) (stating that § 4072 grants jurisdiction over a SFIP lawsuit against a WYO Company because the WYO Company is the "functional equivalent" of FEMA in SFIP lawsuits).  Contra Downey v. State Farm Fire & Casualty Co., 266 F.3d 675, 680 (7th Cir. 2001) (interpreting § 4072 strictly and limiting suits pursuant to § 4072 to suits against FEMA only).  The Fourth Circuit has specifically avoided deciding this question by holding that 28 U.S.C. § 1331 grants federal question jurisdiction over flood-related breach of contract actions brought against WYO Companies. Studio Frames, 369 F.3d at 379-80 & n.1.

promulgated by FEMA as codified in the Code of Federal Regulations. 44 C.F.R., Pt. 61, App. A.[5]

All flood insurance policies issued by WYO companies must mirror the terms and conditions of the SFIP.[6]  44 C.F.R. § 61.13. Among these terms and conditions, the SFIP requires that an insured submit a proof of loss statement within 60 days of suffering the loss.  SFIP, Art. VII(J)(4).  The SFIP also sets the statute of limitations to sue under the SFIP at one (1) year from the date of receiving the written denial of a claim.  SFIP, Art. VII(R).  The WYO Company may not alter or waive any of the conditions and/or terms of the SFIP.  44 C.F.R. § 61.13.  Indeed, WYO Companies act as "fiscal agents of the United States." 42 U.S.C. § 4071(a) (2000).  Therefore, all payments made pursuant to a SFIP are made directly out of the United States Treasury and are, thus, a "direct charge on the public treasury."  <u>Gowland v. Aetna</u>, 143 F.3d 951,

---

[5] Like any insurance policy, the terms of the SFIP may be amended from time to time, but FEMA itself makes these amendments, rather than the WYO Company.  Thus, the SFIP that is presently in effect pursuant to the current C.F.R. may contain terms that differ slightly from Harris's SFIP due to recent amendments, but any such differences are not material here.  <u>See</u> <u>Dawkins v. Witt</u>, 318 F.3d 606, 608 n.1 (4th Cir. 2003).  The provision most salient to the instant motion for summary judgment, the requirement to submit a proof of loss within 60 days, has not been affected by any amendments to the SFIP.

[6] Though the provisions of the SFIP contained in the Appendix of the C.F.R. and in the policy issued to Harris are identical, for consistency, the Court will refer to the various provisions of Harris's SFIP, rather than to the analogous sections found in the C.F.R.

955 (5th Cir. 1998) (citing <u>In re Estate of Lee</u>, 812 F.2d 253, 256 (5th Cir. 1987)).

### III.  <u>**FACTUAL BACKGROUND**</u>

The Court views the record in the light most favorable to Harris, the non-moving party in this motion for summary judgment. <u>See</u> <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>, 763 F.2d 604, 610 (4th Cir. 1985).  Therefore, for the purpose of summary judgment, and without conceding their ultimate truth, the Court assumes the following facts to be true.[7]

Harris owns a single family dwelling in York County, Virginia. At all relevant times, State Farm insured Harris under a SFIP issued by State Farm in its capacity as a WYO Program Company pursuant to the NFIP.[8]  Harris's flood policy as issued by State Farm conformed in all respects to the SFIP, and it provided Harris with flood insurance having a dwelling coverage limit of $150,000 and personal property coverage of $60,000.  At all relevant times, Harris paid the premiums to keep the flood insurance in force.

On September 18, 2003, a storm commonly known as Hurricane Isabel ("Isabel") passed through the Hampton Roads area, including

---

[7] State Farm and Harris dispute some of these facts.  Any such disputes, however, do not affect the material facts for this summary judgment motion, namely, whether Harris met the SFIP proof of loss requirement.

[8] State Farm also insured Harris under a separately-issued homeowner's insurance policy not at issue here.

York County.[9]  The crawlspace under Harris's home became inundated with water during Isabel, causing the HVAC system to be saturated and partially filled with water.[10]  As a result, the HVAC system became contaminated with mold, which led to the spread of mold throughout Harris's home.[11]

On September 19, 2003, the first day after Isabel, Harris called his long-time State Farm agent, Tom Tragle, to inform him of damage to Harris's home.[12]  During this telephone conversation,[13]

---

[9] State Farm claims that Isabel was downgraded from a category 1 hurricane to a tropical storm by the time it passed through York County.  The parties agree, nonetheless, that Isabel reached Harris's home on September 18, 2003.

[10] Harris claims that this inundation of water was a "flood," as defined by the SFIP.  State Farm disputes that a flood as defined by the SFIP occurred on Harris's property during Isabel. The Court notes that the SFIP defines "flood" as, "[a] general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is [the insured's] property) from: . . . (b) Unusual and rapid accumulation of runoff or surface waters from any source."  SFIP, Art. II(A)(1).  Though this is a case involving recovery under a flood insurance claim, the Court need not reach the issue of whether a flood occurred, as that term is defined in the SFIP.  Instead, the dispositive issue under consideration here is whether Harris timely filed his proof of loss as required under the flood policy.

[11] State Farm argues that mold damage caused to Harris's home was not be covered under the SFIP.  The Court also need not reach this issue, however, because the proof of loss issue is dispositive.

[12] State Farm claims that Harris did not make first contact with Tragle to report his loss until October 3, 2003.

[13] State Farm disputes the account of Harris's interactions with Tragle, the substance of which is derived solely from Harris's own deposition and arguments contained in his Brief in Opposition.

Tragle asked Harris whether Harris and his family were physically safe, whether there was any life-threatening damage to Harris's home, and what damage there was.[14]   Tragle then told Harris that because of the severity of the storm he was receiving claims of much worse damage at other homes and that he would work on Harris's claim as soon as possible.  Meanwhile, Tragle instructed Harris to get estimates to repair the damage and State Farm "will probably just cut you [Harris] a check and get it straight right away."

At some point in the next two weeks, Harris delivered some repair estimates to Tragle's office.[15]   Upon receipt of these estimates, Tragle told Harris that there was more damage than

---

[14] During this conversation, it is unclear whether Harris described any possible flood damage, or whether Harris mentioned only the damage to the roof of the house.  The Court notes that in his deposition, Harris does not specifically state how he described the damage during this conversation or whether he mentioned possible flood damage at this time.

[15] It is apparent that Harris did submit some repair estimates to Tragle.  It is unclear, however, the exact contents of these estimates.  In his deposition, Harris states that he took four estimates to Tragle's office: two for repairs to the roof and two for repairs to the HVAC system.  In Harris's Brief in Opposition, on the other hand, Harris states that he delivered four estimates, all for repairs to the HVAC system.  Furthermore, State Farm alleges that the first "estimates" it received from Harris were two receipts for repairs already completed on Harris's roof and property, but nothing for the HVAC system.

The timing of Harris's submission of any estimates is also unclear.  In his deposition, Harris never clearly states a date on which he delivered his estimates to Tragle.  The four estimates referred to in his Brief in Opposition, however, are dated in November 2003.  The receipts that State Farm refers to are dated in late September 2003.

Tragle expected, that the estimates were much higher than Tragle expected, and that Tragle did not realize there was damage to be claimed under both the homeowner's and the flood insurance policies.  Tragle then informed Harris that State Farm would have two separate claims people come to Harris's house and that Harris would have to schedule with the catastrophe team from that point forward.  Finally, Tragle told Harris not to worry because Harris had insurance to cover both the homeowner's and flood policy claims.  Tragle indicated that he would submit the estimates and "everything would be taken care of."[16]

Following repeated attempts to contact Harris,[17] State Farm claims adjuster Eric Boh met with Harris at his home on October 30, 2003, inspected the exterior and interior of the home, and photographed the property.[18]   On November 14, 2003, another adjuster, Mark Harter, assigned to the flood policy claim, met with

---

[16] Harris alleges in his Brief in Opposition that during this conversation Tragle also told Harris that he need not take any further action with respect to Harris's flood policy claim.  The Court, however, finds no support whatsoever for this contention in the record.

[17] State Farm's records indicate that State Farm representatives attempted to or did contact Harris by phone or in person on October 4, 5, 6, 10, 16, 23, 24, 27, 28, and 29, 2003. Harris does not specifically dispute these records, but complains that State Farm refused to send an adjuster or claims representative to inspect the home until approximately forty-five days after Isabel.

[18] Boh apparently inspected the home under only the auspices of adjusting the homeowner's claim.

Harris at Harris's home, inspected Harris's house, and photographed the roof, exterior of the house, and the crawlspace. After consulting with State Farm Claims Team Manager, Duane Wallace, Harter mailed three letters dated November 15, 2003, to Harris denying Harris's claims under both the homeowner's and flood policies.[19]

Despite these denial letters and pursuant to Harris's request, a third State Farm adjuster, Ozzie Giles, met with Harris on December 17, 2003, and again on January 5, 2004, to inspect the interior of the house and the roof. On January 9, 2004, Giles spoke with Harris and explained that there was no coverage for the damage and that the original denial letters, dated November 15, 2003, were still applicable. On January 14, 2004, FEMA's deadline to submit a proof of loss for damages resulting from Isabel expired.[20]

In September 2004, nearly a year after Isabel, Harris retained

---

[19] The first letter denied coverage for damage to Harris's HVAC system, stating that "there was no evidence that the damage was caused by the peril of flood or that there was a general condition of flooding." The second letter denied Harris's claim for personal property coverage because it was "located off the described location." The third letter denied the homeowner's claim because the damage to Harris's home was caused by mold and/or mildew, which was excluded from the policy.

[20] Following Isabel, FEMA extended the normal 60-day requirement by an additional 60 days, thus allowing those claiming losses until January 14, 2004, to submit the requisite proof of loss. Significantly, at no time did FEMA ever waive the requirement to submit the proof of loss; it was only the deadline for doing so that was extended.

counsel in connection with his SFIP claim.  Pursuant to discussions with Harris's counsel, State Farm agreed to reinspect Harris's home.  Though State Farm reaffirmed via an October 8, 2004, letter to Harris that the original denial (contained in the November 15, 2003, letters) continued to stand, State Farm reinspected Harris's home on November 1, 2004.  Following this reinspection, on November 15, 2004, State Farm informed Harris that it was reaffirming its denial because mold damage was not covered by Harris's policies.

On January 6, 2005, Harris instituted the present lawsuit against State Farm.  After removing this case to federal court, State Farm answered Harris's complaint, asserting twenty-eight affirmative defenses.  Among these defenses, State Farm alleged that Harris had not complied with the requirements of the SFIP by his failure to submit a signed and sworn proof of loss statement within 60 days of the loss.  On September 9, 2005, State Farm moved for summary judgment on this ground, claiming that Harris's failure to timely submit the proof of loss absolutely barred him from recovery under the SFIP.[21]

For the following reasons, the Court GRANTS Defendant State Farm Fire and Casualty Company's motion for summary judgment.

---

[21] As noted _supra_, State Farm also moved for summary judgment on Harris's flood insurance claim on two additional grounds. First, State Farm argued that Harris's lawsuit was time-barred by the SFIP's one-year statute of limitations.  Second, State Farm argued that mold was not covered by the SFIP.  Because the proof of loss issue is dispositive in this case, this Court expresses no opinion about the validity of these remaining claims.

## IV. <u>MOTION FOR SUMMARY JUDGMENT STANDARD</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  Facts are deemed material if they might affect the outcome of the case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant.  <u>Id.</u>

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party.  <u>Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.</u>, 763 F.2d 604, 610 (4th Cir. 1985).  "If, however, 'the evidence is so one-sided that one party must prevail as a matter of law,' we must affirm the grant of summary judgment in that party's favor."  <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 56 F.3d 542, 545 (4th Cir. 1995) (quoting <u>Anderson</u>, 477 U.S. at 251-52).  Moreover, summary judgment must be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear

12

the burden of proof at trial," <u>Celotex</u>, 477 U.S. at 322, as the non-moving party is required to "set forth specific facts showing that there is a genuine issue for trial" with respect to that element.  Fed. R. Civ. P. 56(e).

## V. <u>REQUIREMENT TO SUBMIT PROOF OF LOSS WITHIN SIXTY DAYS</u>

Harris seeks to recover under a Standard Flood Insurance Policy ("SFIP") issued pursuant to the National Flood Insurance Program ("NFIP").  In order to recover under the SFIP, the insured must comply with all requirements detailed in the SFIP.  When an insured has met the SFIP requirements, payments are made directly from the United States Treasury.  <u>See Gowland v. Aetna</u>, 143 F.3d 951, 955 (5th Cir. 1998) (citing <u>In re Estate of Lee</u>, 812 F.2d 253, 256 (5th Cir. 1987)).  In order to "protect[] ... the public fisc," the Supreme Court has offered strict guidance about the conditions precedent to receiving payment from the United States Treasury. <u>Heckler v. Community. Health Services</u>, 467 U.S. 51, 63 (1984).  As an initial matter, the Court turns to this jurisprudence in order to lay a proper doctrinal foundation for the standards guiding this Court's decision on this motion for summary judgment.

## A. <u>Supreme Court Cases</u>

Claims against the Government are strictly construed because the potential result is payment of money out of the United States Treasury.  <u>Community Health Services</u>, 467 U.S. at 63.  In particular, the Supreme Court has "recognized that equitable

estoppel will not lie against the Government as it lies against private litigants," Office of Personnel Mgmt. v. Richmond, 496 U.S. 414, 419 (1990), and the Court has strongly suggested that such claims of estoppel, sought to be raised by an insured, arising out of actions or inactions by an agent of the Government, may very well never lie against the Government.  Id. at 423.

As early as 1947, the Supreme Court rejected a wheat farmer's claim for estoppel against the Government even though a Government agent had misled the farmer into believing that his wheat crop was properly insured by a government agency.  Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947).  Then, as now, the Court noted that all persons are charged with knowledge of the United States statutes, as well as the rules and regulations found in the Federal Register.  Id. at 384-85.  The regulations, therefore, were binding on all, including this farmer, who sought to be insured by the Government, "regardless of actual  knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance," and "no matter with what good reason [the farmer] thought [he] had obtained insurance from the Government."  Id. at 385.

Almost forty years later, in 1984, the Court extended this principle, holding that the misrepresentations of a private company acting as the fiscal intermediary of the Government also could not give rise to claims of estoppel against the Government.  Community Health Services, 467 U.S. at 64-66.  The Court left open the

14

question of whether estoppel may ever lie against the Government,
Id. at 60-63, but observed that "[p]rotection of the public fisc
requires that those who seek public funds act with scrupulous
regard for the requirements of law."   Id. at 63.   It was
unreasonable, therefore, to rely on the oral advice of the fiscal
intermediary when the statutes, regulations, and the complainant's
own Reimbursement Manual all required that policy questions be
determined by the Government, not the intermediary.   Id. at 64-66.

Six years later, in Richmond, supra, the Court again squarely
addressed, but left the door narrowly open on the question of
whether the "affirmative misconduct" of the Government's agent(s)
could give rise to a successful claim of estoppel against the
Government, and thereby result in the payment of money out of the
Treasury:

> Despite the clarity of [the Court's] earlier
> decisions, dicta in our more recent cases have
> suggested the possibility that there might be
> some situation in which estoppel against the
> Government could be appropriate. . . . The
> language in our decisions has spawned numerous
> claims for equitable estoppel in the lower
> courts. . . . In sum, Courts of Appeals have
> taken our statements as an invitation to
> search for an appropriate case in which to
> apply estoppel against the Government, yet we
> have reversed every finding of estoppel that
> we have reviewed.  Indeed, no less than three
> of our most recent decisions in this area have
> been summary reversals of decisions upholding
> estoppel claims . . . As it has in the past,
> the Government asks us to adopt a 'flat rule
> that estoppel may not in any circumstances run
> against the Government.' . . . But it remains
> true that we need not embrace a rule that no

> estoppel will lie against the Government in
> any case in order to decide this case.  We
> leave for another day whether an estoppel
> claim could ever succeed against the
> Government.

Richmond, 496 U.S. at 421-23.  Thereafter, upon reviewing its most recent cases showing a "most strict approach to estoppel claims involving public funds," the Court concluded that "not a single case has upheld an estoppel claim against the Government for the payment of money . . . [because] operation of estoppel against the Government in the context of payment of money from the Treasury could in fact render the Appropriations Clause [of the U.S. Constitution] a nullity."  Id. at 426-28.  Congress alone has authority to make laws providing for payment of money out of the Treasury.[22]  Id. at 428.  Allowing Executive advice and representations to estop the Government, therefore, "would give [these actions] the practical force of law [resulting in payment of money out of the Treasury], in violation of the Constitution."  Id. Thus, the Court ultimately rejected a disability claimant's estoppel claim even though a government employment specialist had misinformed him about his ability to work overtime and still be able to receive disability benefits.  Id. at 434.

    With these principles in mind, the Court now turns to consideration of State Farm's motion for summary judgment on the

---

    [22]  "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."  U.S. Const. Art. I, § 9, cl. 7.

grounds that Harris failed to submit a timely proof of loss.

## B. **Sixty-Day Requirement is Strictly Construed**

In the case of a flood loss, the SFIP requires that an insured must submit to the insurer "[w]ithin 60 days after the loss, . . . a proof of loss, which is your statement of the amount you are claiming under the [flood] **policy** signed and sworn to by you . . . ." SFIP, Art. VII(J)(4) (emphasis in original). The insured must include in this proof of loss statement:

> (a) The date and time of loss;
> (b) A brief explanation of how the loss happened;
> (c) Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
> (d) Details of any other insurance that may cover the loss;
> (e) Changes in title or occupancy of the covered property during the term of the **policy**;
> (f) Specifications of damaged **buildings** and detailed repair estimates;
> (g) Name of mortgagees or anyone else having a lien, charge, or claim against the covered property;
> (h) Details about who occupied any insured **building** at the time of loss and for what purpose; and
> (i) The inventory of damaged personal property [as] described in [Article VII(J)(3)] above.

Id. (Emphasis in original). These provisions of the SFIP are codified in the Code of Federal Regulations at 44 C.F.R. Pt. 61, App. A. State Farm provided Harris with a flood insurance policy identical in all respects to that found in the governing

regulations.    Thus,  Harris  is  charged  with  knowledge  of  the
requirements  of  the  SFIP,  "regardless  of  actual  knowledge  of  what
is  in  the  Regulations  or  of  the  hardships  resulting  from  innocent
ignorance  [of  the  Regulations]."   Merrill, 332 U.S. at 385.

Harris  was  required  to  meet  all  conditions  precedent  to
recovery  under  the  SFIP  because  those  seeking  public  funds  must
"act  with  scrupulous  regard  for  the  requirements  of  law."
Community Health Services, 467 U.S. at 63.   According  to  the
regulations  and  Harris's  own  policy,  failure  to  submit  a  proof  of
loss  bars  recovery  under  the  SFIP.   See  Dawkins v. Witt, 318 F.3d
606, 612 (4th Cir. 2003) (requiring  proof  of  loss  within  60  days
even  when  hurricane  made  it  extremely  difficult  to  compile  the
information  within  60  days);  see also  Suopys v. Omaha Prop. &
Casualty, 404 F.3d 805, 810 (3rd Cir. 2005) (citing  Dawkins  and
similar  decisions  in  the  First,  Fifth,  Sixth,  Eighth,  Ninth  and
Eleventh  Circuits  for  the  same  general  rule);  but see  Studio Frames
Ltd. v. Standard Fire Ins. Co., 369 F.3d 376, 382-83 (4th Cir.
2004) (holding  that  failure  to  submit  a  proof  of  loss  within  60
days  generally  bars  recovery  except  when  the  insurer  repudiates
SFIP  coverage  prior  to  the  end  of  the  60-day  limit).[23]   Thus,  Harris

---

[23] Repudiation  occurs  when  the  insurer  deems  coverage  invalid
irrespective  of  the  cause  of  the  claimed  loss  and  gives  unequivocal
notice  to  the  insured  that  it  will  not  perform  its  obligations
under  the  SFIP  under  any  circumstances.   See  Mathews v. Farmers
Ins. Co. of Oregon, Civ. No. 04-6117, 2005 WL 1565261, at *5-6 (D.
Ore. June 27, 2005) (distinguishing  Studio Frames).   Significantly,
the  Supreme  Court  has  held  that  an  insurer's  denial  of  a  claim  for

must have submitted a signed and sworn proof of loss before January 14, 2004, detailing the required information.  Harris, however, has never submitted a proof of loss in the form contemplated by the SFIP.

Despite this failure, the Court construes Harris to claim that he substantially complied with the proof of loss requirement by providing his State Farm agent, Tom Tragle, with four estimates for repairs of the home.  At most, however, these estimates possibly satisfy only one of the nine types of information required to be included in the proof of loss.  SFIP, Art. VII(J)(4)(f) (requiring specifications of damaged buildings and repair estimates).  Even assuming that these estimates satisfy this one requirement, Harris has never submitted any of the remaining eight types of information, nor has he met the requirement that the proof of loss be "signed and sworn."  SFIP, Art. VII(J).  The Court finds that these four estimates do not satisfy the requirements detailed in the SFIP for submission of a proof of loss, let alone to support a claim of "substantial" compliance.  See Gowland v. Aetna, 143 F.3d

benefits does not, in and of itself, constitute a repudiation.  New York Life Ins. Co. v. Viglas, 297 U.S. 672, 676 (1936).  Here, State Farm denied benefits because 1) it determined that mold was not covered under the policy, and 2) it claimed that there was no general condition of flooding.  State Farm did not claim that Harris's SFIP coverage would be invalid under any and all circumstances.  State Farm did not repudiate Harris's SFIP coverage, and Harris does not argue to the contrary.  Thus, this narrow exception to the general rule created by the Fourth Circuit in Studio Frames, supra, is inapplicable here.

951, 953-54 (5th Cir. 1998) (rejecting claim of substantial compliance where the insured submitted a "notice of loss" form provided by the insurer, that contained substantially the same information as that required under the SFIP, but did not meet the proof of loss requirement under the SFIP).  The Court holds that Harris's failure to submit a proof of loss bars recovery under the SFIP.  Community Health Services, 467 U.S. at 63 ("[T]hose who seek public funds [must] act with scrupulous regard for the requirements of law.").

Despite the Court's finding that Harris's failure to abide by the terms of the flood policy is fatal to his case, the Court construes Harris to claim that State Farm should not be able to rely on the proof of loss defense because of the doctrines of waiver and estoppel.  The Court now turns to these claims individually.

## C. Waiver

The Court construes Harris to argue that State Farm's actions, including those of agent Tom Tragle, should constitute a waiver of the SFIP requirements.  This claim also fails, however, for the simple fact that State Farm cannot waive any of the requirements of the SFIP.  The SFIP plainly states:

> This policy cannot be changed nor can any of
> its provisions be waived without the express
> written consent of the Federal Insurance
> Administrator.  No action that we take under
> the terms of this policy constitutes a waiver
> of any of our rights.

20

SFIP, Art. VII(D).   Neither party alleges that the Federal
Insurance Administrator waived any requirements of the SFIP by
express written consent.   Indeed, absent the express written
consent of the Federal Insurance Administrator, there is no other
provision in the SFIP providing for waiver of its requirements.[24]

Harris, however, urges that State Farm's actions amount to a
waiver of the requirement that Harris submit a proof of loss within
60 days of the loss.   Harris alleges that State Farm agent Tom
Tragle instructed him that he need do nothing more than submit
estimates for damages to his home with regards to the flood policy
claim.  This, Harris argues, combined with State Farm's "reopening"
of the investigation well after the 60-day limit had expired,
allegedly shows that State Farm dealt with Harris as if he had met
the proof of loss requirements. Last, Harris argues that no State
Farm agent ever mentioned the proof of loss requirement or
requested that Harris comply with it.   According to the express
terms of the SFIP, however, none of these arguments are availing.

The SFIP expressly states that "<u>[n]o action that we [the</u>

---

[24] The SFIP does contain a provision allowing the insurer to
accept an adjuster's report of the loss in lieu of the insured's
proof of loss.  SFIP, Art. VII(J)(9).  If the insurer does accept
an adjuster's report, however, the SFIP plainly requires that
insured must sign the adjuster's report for such acceptance to be
valid.  <u>Id.</u>  In this case, there is no evidence, nor any argument
by Harris, that State Farm has accepted an adjuster's report in
lieu of Harris's proof of loss, much less any evidence that Harris
has signed any such report.

insurer] take . . . constitutes a waiver of any of our rights."
SFIP, Art. VII(D) (emphasis added).  The Regulations also state
that a WYO Company, such as State Farm, cannot waive or alter any
of the requirements of the SFIP. 44 C.F.R. § 61.13.  Thus, by the
express terms of the SFIP as codified in the Regulations and as
found in the express terms of Harris's own policy, State Farm
cannot waive the requirements of the SFIP by <u>any</u> action that it
takes, including the conduct alleged by Harris.  <u>See</u> <u>Dawkins</u>, 318
F.3d at 610-11.  This Court holds that the requirement to submit a
proof of loss within 60 days was not waived either by express
written consent of the Federal Insurance Administrator or by the
alleged actions of State Farm.

### D. **Estoppel**

The Court construes Harris to argue that State Farm should be
equitably estopped from raising the defense that Harris failed to
timely provide a proof of loss.  The Supreme Court has never upheld
"a single case . . . [involving] an estoppel claim against the
Government for the payment of money." <u>Richmond</u>, 496 U.S. at 427.
Furthermore, the Circuit Courts of Appeals, including the Fourth
Circuit, have uniformly rejected arguments that an insurer's
actions or inactions could estop the insurer from relying on the
60-day requirement to submit a proof of loss as an affirmative
defense. <u>Dawkins</u>, 318 F.3d at 612; <u>Phelps v. FEMA</u>, 785 F.2d 13, 19
(1st Cir. 1986); <u>Suopys v. Omaha Prop. & Casualty</u>, 404 F.3d 805,

810 (3rd Cir. 2005); Gowland v. Aetna, 143 F.3d 951, 954-55 (5th
Cir. 1998); Neuser v. Hocker, 246 F.3d 508, 511-12 (6th Cir. 2001);
Mancini v. Redland Ins. Co., 248 F.3d 729, 735 (8th Cir. 2001);
Flick v. Liberty Mutual Fire Ins. Co., 205 F.3d 386, 390-91 (9th
Cir. 2000); and Sanz v. U.S. Security Ins. Co., 328 F.3d 1314,
1319-20 (11th Cir. 2003).

The Supreme Court has not expressly held that estoppel may
never lie against the Government, or an agent of the Government,
resulting in the payment of money out of the United States
Treasury.  Richmond, 496 U.S. at 419-23.  The Supreme Court's
decisions have seemingly left open the very narrow opportunity to
estop the Government in the event that the complainant can prove
"affirmative misconduct" by a Government agent.  Dawkins, 318 F.3d
at 611 (citing INS v. Hibi, 414 U.S. 5, 8 (1973); Schweiker v.
Hansen, 450 U.S. 785, 788-89 (1981)).  Therefore, in order for
Harris to equitably estop State Farm as an agent of the Government,
Harris must show that State Farm's actions rose to the level of
"affirmative misconduct."[25]

---

[25] Before reaching the question of "affirmative misconduct,"
Harris would have to establish each of the traditional elements of
estoppel.  Dawkins, 318 F.3d at 611.  For the purpose of summary
judgment, the Court assumes, without expressing an opinion, that
Harris can establish the four traditional elements of estoppel:
"'(1) the party to be estopped knew the true facts; (2) the party
to be estopped intended for his conduct to be acted upon or acted
in such a way that the party asserting estoppel had a right to
believe that it was intended; (3) the party claiming estoppel was
ignorant of the true facts; and (4) the misconduct was relied upon
to the detriment of the parties seeking estoppel.'" Id. at 611 n.6

Harris relies on the following alleged conduct to prove his claim of equitable estoppel and to show that State Farm engaged in "affirmative misconduct."[26]   During the September 19, 2003, telephone conversation with State Farm agent Tom Tragle, Tragle advised Harris that he need only get estimates for damages to Harris's home and that State Farm would "probably just cut [Harris] a check and get it straight right away."   Later, when Harris delivered estimates to Tragle's office, Tragle told Harris that he would submit the estimates to State Farm for processing and that he expected Harris's claim would be taken care of by State Farm. Tragle also assured Harris not to worry about his claims because he had insurance to cover both the homeowner's and flood policy claims.   Finally, as to Tragle, Harris alleges that Tragle instructed him that he need not take any further action with regard to the flood policy claim.

Furthermore, Harris asserts that State Farm delayed investigating the damage at Harris's home for approximately forty-five days after Isabel.  Then, after denying Harris's claims, State Farm proceeded to "reopen" the investigation in September 2004 at Harris's request.  Harris urges that the Court should consider this evidence that State Farm had reversed its original denial and as

---

(quoting <u>McCrary v. Fed. Emergency Mgmt. Agency</u>, 632 F. Supp. 544, 547 (E.D.N.C. 1986) (citations omitted)).

[26] The Court reiterates that it accepts these allegations as true only for the purpose of summary judgment.

evidence that State Farm considered Harris to have met the proof of loss requirement.  In fact, Harris argues that during this entire process, no State Farm representative ever told him about the proof of loss requirement, nor did anyone at State Farm ever specifically request that Harris submit a proof of loss.  The Court is not persuaded to rule for Harris on this point.

Harris is charged with knowledge of the statutes, regulations, and terms of his own insurance policy.  It was Harris's responsibility, and no one else's, to assure that he submitted a signed and sworn proof of loss by January 14, 2004.  Despite his protestations to the contrary, State Farm had no duty to inform Harris of this requirement.  See SFIP, Art. VII(J)(7) ("[Y]ou must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.") (emphasis added).

Even if all of Harris's allegations are true, any such actions, inactions, misrepresentations, and misstatements are insufficient to show "affirmative misconduct" by State Farm. Moreover, even assuming the truth of these allegations, this Court determines that State Farm's actions here were, at worst, "unprofessional and misleading." Dawkins, 318 F.3d at 612.  Like the Fourth Circuit in Dawkins, this Court holds that State Farm's conduct "is no worse than that the Supreme Court has determined does not rise to a level to justify estoppel against the

25

government."[27]  Id.  Furthermore, to estop State Farm in this case would result in the payment of money out of the United States Treasury contrary to the Appropriations Clause of the Constitution. Richmond, 496 U.S. at 428.  Though the Supreme Court precedents leave open the possibility that a claim of estoppel could lie against the Government, under certain circumstances, this is not such a case where estoppel would be appropriate.  This Court holds that State Farm is not estopped from relying on Harris's failure to submit a proof of loss as an affirmative defense.

## VI. Conclusion

The Standard Flood Insurance Policy ("SFIP") requires that an insured submit a proof of loss within 60 days of suffering a loss as a result of a flood.  This provision of the SFIP is strictly construed and an insured must comply fully with its requirements. Harris has never submitted a proof of loss that conforms with the requirements of the SFIP.  Harris has not established that the Director of FEMA has waived any of the requirements of the SFIP. Likewise, Harris has not proven that State Farm acted with "affirmative misconduct" so as to estop State Farm from relying on Harris's failure to submit a proof of loss as an affirmative defense.  Having failed to do so, this Court refuses to depart from well-established precedent in the Fourth Circuit, as well as in

---

[27] The Court points out that, regardless of State Farm's actions, Harris has never filed a proof of loss, let alone late as did the insured in Dawkins.  See Dawkins, 318 F.3d at 609.

nearly every other Circuit Court of Appeals across the country. Harris's failure to submit a signed and sworn proof of loss statement is an absolute bar to recovery under the SFIP.

## VII. <u>ORDER</u>

For the foregoing reasons, the Court GRANTS Defendant State Farm Fire and Casualty Company's motion for summary judgment.

The Clerk shall mail a copy of this Order to all counsel of record.

ENTERED this 11th day of January, 2006.


_____   _____/s/_____
                            F. Bradford Stillman
                            United States Magistrate Judge